

IN THE

# Court of Appeals of Indiana

L.M. Zeller, *et al.*,

*Appellants-Plaintiffs / Cross-Appellees*



FILED

Jul 08 2026, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Fire Prevention and Building Safety Commission, *et al.*,

*Appellees-Defendants / Cross-Appellants*

---

July 8, 2026

Court of Appeals Case No.
25A-CT-2267

Appeal from the Vanderburgh Circuit Court

The Honorable Celia M. Pauli, Magistrate

Trial Court Cause No.
82C01-1301-CT-2

---

**Opinion by Chief Judge Tavitas**
Judges Bradford and Felix concur.

**Tavitas, Chief Judge.**

## Case Summary

[1] In this interlocutory appeal, L.M. Zeller ("Mike"), individually and d/b/a Zeller Elevator Company ("Zeller"), Leo Mark Zeller ("Mark"), Louis M. Zeller III ("Louis"), Andrew M. Boeglin ("Andrew"), and Matthew Boeglin ("Matthew") (collectively, "Plaintiffs") appeal the trial court's partial grant of summary judgment in favor of the Indiana Fire Prevention and Building Safety Commission, Indiana Department of Homeland Security, Indiana Division of Fire and Building Safety, and Indiana Elevators and Amusements Section (collectively, "Agencies"). On cross-appeal, Agencies appeal the trial court's partial denial of Agencies' motion for summary judgment. We conclude that the trial court should have granted Agencies' motion for summary judgment in its entirety. Accordingly, we affirm in part, reverse in part, and remand with instructions to grant Agencies' motion for summary judgment.

## Issues

[2] Plaintiffs raise several issues, which we consolidate and restate as:

    I.    Whether the trial court properly granted summary judgment to Agencies on Plaintiffs' claims under the Indiana Constitution.

    II.    Whether the trial court properly granted summary judgment to Agencies on Plaintiffs' takings claims.

III.    Whether the trial court properly granted summary judgment to Agencies on Plaintiffs' tort claims.

On cross-appeal, Agencies argue that the trial court erred by denying summary judgment to Agencies on Plaintiffs' claims regarding the Reciprocal Licensing Matter.

## Facts

[3]     Mike owned and operated Zeller from 1967 to 2018. Zeller manufactured, installed, serviced, and repaired passenger, freight, commercial, and residential elevators. Mark, Louis, Andrew, and Matthew were employees of Zeller. Agencies have oversight of elevators and elevator contractors. Plaintiffs contend that actions by Agencies over a period of several years resulted in violations of Plaintiffs' rights.[1]

### Signatures Matter

[4]     In January 2012, annual operating permits for several elevators serviced by Zeller were denied because Mike signed the renewal forms as both the elevator mechanic and the elevator inspector. Zeller sought administrative review of the denials, and an administrative law judge ("ALJ") denied Zeller's administrative

---

[1] The third amended complaint also includes claims for agency actions related to licensing and continuing education requirements that Agencies enforced in the mid-2000s; agency actions related to Zeller's method of protecting hydraulic elevator cylinders by encasing the cylinder with concrete; and statements by two state inspectors to Zeller's clients. Plaintiffs, however, do not raise these claims on appeal, and accordingly, we do not address these claims.

appeal. In October 2012, the Commission, however, overturned the ALJ's decision and ordered the approval of the permits.

**Jarrett Building Matters[2]**

In April 2012, Agencies determined that Zeller altered an elevator in the Jarrett Building without having applied for an alteration permit. Zeller sought administrative review and argued that it was merely repairing, not altering, the elevator. The ALJ denied Zeller's administrative appeal, and the Commission upheld the ALJ's order. Zeller sought judicial review.

While the judicial review petition was pending, Zeller filed a second petition for administrative review regarding the same elevator, and the ALJ determined that Zeller's applications were deficient and the Commission upheld the ALJ's order. Zeller, however, eventually obtained an alteration permit and completed the work on the elevator after a delay of almost a year and a half.

In the judicial review proceeding regarding the first order, the trial court found that the Commission's order was unreasonable and not supported by substantial evidence. The trial court determined that the repair was not an alteration and that no alteration permit was required. Accordingly, in February 2016, the trial court granted Zeller's petition for judicial review.

---

[2] The parties divide this into the Jarrett Building Matter and the Jarrett Permit Matter, but we consolidate these into the Jarrett Building Matters.

## Reciprocal Licensing Matter

In 2014, Zeller was informed that elevator mechanic licenses were being granted to individuals with such licenses issued by the Commonwealth of Kentucky based upon a reciprocal licensing provision of Indiana Code Section 22-15-5-12(b)(1). Zeller applied for reciprocity-based licenses for its employees, and the applications were denied. Zeller and the employees sought administrative review, and an ALJ issued an order in June 2015. The ALJ found that other similarly situated individuals were granted reciprocity-based licenses, the denial of the reciprocal licenses "smacks of vindictiveness," and Zeller's employees were entitled to the reciprocity-based licenses.[3] Appellants' App. Vol. V p. 193. The Commission affirmed the ALJ's order on September 1, 2015.[4]

## Plaintiffs' Action against Agencies

In January 2013, Plaintiffs filed a complaint against Agencies, and Plaintiffs later amended the complaint. A third amended complaint was filed in May 2017 and alleged:

> (1) Count I, damages under the Indiana Tort Claims Act for Agencies breaching their duty of care toward Plaintiffs;

---

[3] Plaintiffs contend that the Agencies held a "grudge" against Mike's brother, Lance. Appellants' App. Vol. IV p. 170.

[4] Plaintiffs contend that Andrew left his employment with Zeller in the summer of 2015 after his license was not issued in a timely manner. Mike opted not to renew his license in 2017. Mike was issued a renewed license in February 2018, but he closed Zeller in March 2018.

(2) Count II, due process and due course of law deprivations "in violation of the Fifth Amendment to the United States Constitution" and "Article 1, Section 12 of the Indiana Constitution" for "wrongfully depriv[ing] the Plaintiffs of substantial property interests without due process or due course of law";

(3) Count III, equal protection deprivations "in violation of the Fourteenth Amendment to the United States Constitution";

(4) Count IV, tortious interference with a contractual and/or business relationship because Agencies "acted in such a way as to intentionally induce the breach of such contracts or the termination of such business relationships, to the detriment of" Zeller.

Appellants' App. Vol. II pp. 68-70. Each count sought "all such monetary damages as will justly compensate [Plaintiffs] for their injuries, losses, and damages sustained, the costs of this action, and all further relief to which Plaintiffs are entitled under the premises." *Id.* at 67-70.

[10] In October 2021, Agencies filed a motion for summary judgment, which the trial court partially granted. The trial court found that Agencies had immunity pursuant to Indiana Code Section 34-13-3-3(a)(8) of the Indiana Tort Claims Act ("ITCA") from Plaintiffs' tort claims set out in Count I.

[11] On January 29, 2025, Agencies filed their second motion for summary judgment. Agencies argued: (1) Plaintiffs' claim for tortious interference with a contractual or business relationship was barred by statutory immunity under

Indiana Code Section 34-13-3-3[5] of the ITCA; (2) the tortious interference claim failed as a matter of law; (3) the tortious interference claim related to agency actions governed by Administrative Orders and Procedures Act ("AOPA") and the trial court lacked jurisdiction; (4) claims related to licensing issues from 2008 were barred by the statute of limitations; and (5) Counts II and III alleged violations of constitutional rights and a state agency may not be named as a defendant under 42 U.S.C. § 1983.

[12] Plaintiffs filed a response and claimed that they made "independent and free-standing claims for relief under the Indiana Constitution," which were not challenged in Agencies' motion for summary judgment. Appellants' App. Vol. V p. 111. Regarding Count III, Plaintiffs argued that, while Count III "expressly mentions only the Fourteenth Amendment to the United States Constitution, Indiana's appellate courts have routinely held that Article 1, Section 23 of the Indiana Constitution offers similar, though even more expansive protections." *Id.* at 135. Plaintiffs also argued that Agencies did not have immunity for the tortious interference claim and that summary judgment on the tortious interference claim was improper.

[13] In response, Agencies also argued that a private right of action for alleged violations of the Indiana Constitution has been rejected by Indiana courts.

---

[5] Agencies argued they were entitled to immunity under the administrative proceeding immunity provision in subsection (6), the discretionary function immunity provision in subsection (7), the enforcement immunity provision in subsection (8), the license and permit immunity provision in subsection (11), and the inspection immunity provision of subsection (12). *See* Ind. Code § 34-13-3-3(a).

Agencies again argued that they were entitled to immunity and that the tortious interference claim was subject to summary judgment.

[14] After a hearing, the trial court entered an order partially granting Agencies' motion for summary judgment on July 11, 2025. The trial court found:

> This Court has previously GRANTED summary judgment as to Count I—Indiana Tort Claims Act—by written order on March 7, 2022. The Court found that [Agencies] were entitled to immunity on that claim. The Court affirms this previous ruling. At that time, the Court found that [Agencies] failed to meet its burden to demonstrate they were entitled to immunity as to Count IV—Tortious Interference with Contractual and/or Business Relationships.
>
> The Court GRANTS [Agencies'] Motion for Summary Judgment as to Counts II and III—Due Process and Due Course of Law and Equal Protection. There is not a private right of action for an alleged violation of the Indiana Constitution. *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007); *see also Dunigan v. State*, 191 N.E.3d 851, 857 (Ind. Ct. App. 2022); *McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 137 (Ind. Ct. App. 2014) (rejecting claim for monetary damages for alleged violation of Art. 8, § 1 of the Indiana Constitution, Indiana's Education Clause, "because there can be no claim for monetary damages arising out of the Indiana Constitution").
>
> The Court considers the arguments as to remaining Count IV—Tortious Interference with Contractual and/or Business Relationships—and whether [Agencies] are entitled to immunity. If immunity exists, the public body and the employees simply are not liable. *Dep't of Natural Resources v. Taylor*, 419 N.E.2d 819, 823 (Ind. Ct. App. 1981). The degree of the Department's

culpability, and the nature of its tortious conduct, are not relevant considerations. *Id.*

The Court has reviewed and considered the arguments of counsel, the designated evidence, and the undisputed, underlying facts for the incidents labeled by the parties as "The Licensing Matter," "The Design Matter," "The Signatures Matter," "The Jarrett Building Matter," "The Jarrett Permit Matter," and "The Licensing and Fines Matter." The Court finds [Agencies] are entitled to immunity under Indiana Code § 34-13-3-3(a)(6), (a)(7), (a)(8), (a)(11) and/or (a)(12) as to the Tortious Interference with Contractual and/or Business Relationships Claim as alleged in Count IV based on these underlying facts.

However, the Court finds there is a genuine issue of material fact with respect to "The Reciprocity Matter." "No one would contend that the immunity shield would protect a State employee whose conduct was outrageous or willful and wanton." *Indiana Dep't of Correction v. Stagg*, 556 N.E.2d 1338, 1345 (Ind. Ct. App. 1990). Specifically, the Court points to the ALJ's Nonfinal Order which states:

> In light of the background here, the history of disputes between the parties that has vividly colored their past interactions, and the subsequent issuance of licenses to other similarly situated individuals, the 2014 denial of reciprocity-based licenses smacks of vindictiveness.

Therefore, the Court finds [Agencies] have not met their burden they are entitled to immunity on this claim.

The Court finds there is no genuine issue of material fact and [Agencies] are entitled to judgment as a matter of law as to Counts II and III and affirms the previous order granting summary judgment as to Count I. The Court PARTIALLY

> GRANTS [Agencies'] Motion for Summary Judgment as to
> Count IV and specifically finds the only remaining factual
> dispute relates to the incident labeled "The Reciprocity Matter"
> by the parties.

Appellants' App. Vol. II pp. 43-45 (internal citations omitted). Plaintiffs filed a motion for interlocutory appeal, which this Court granted. Plaintiffs now appeal the partial grant of Agencies' motion for summary judgment, and Agencies' cross-appeal the partial denial of their motion for summary judgment.

## Discussion and Decision

[15] Plaintiffs and Agencies challenge the trial court's decision regarding Agencies' motion for summary judgment. "We review summary judgment decisions de novo, and Trial Rule 56(C) supplies the framework." *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 684 (Ind. 2024). "The moving party is entitled to summary judgment only if the evidence it designates in support of its motion 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 684-85 (quoting Ind. Trial Rule 56(C)). The purpose of summary judgment is to withdraw issues from the jury only when there are no genuine material factual issues for the jury to decide. *Id.* at 685.

[16] The summary judgment movant has the initial burden of making a *prima facie* showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Isgrig v. Trs. of Indiana Univ.*, 256 N.E.3d 1238, 1244 (Ind. 2025). The burden then shifts to the non-moving party to show the

existence of a genuine issue of material fact. *Id.* On appellate review, we "draw all reasonable inferences in favor of the non-moving party." *Wilson v. Anonymous Defendant 1*, 183 N.E.3d 289, 293 (Ind. 2022).

"In determining whether summary judgment is proper, we consider only the evidentiary material specifically designated by the parties to the trial court . . . ." *Isgrig*, 256 N.E.3d at 1244. "We are [ ] not bound by the trial court's findings and conclusions and will affirm if the trial court's entry of summary judgment can be sustained on any theory or basis in the record." *Id.*

## I. Indiana Constitutional Claims

Plaintiffs first challenge the trial court's grant of summary judgment to Agencies on Plaintiffs' claims under the Indiana Constitution.[6] In Count II, Plaintiffs argued that their rights under "Article 1, Section 12 of the Indiana Constitution" were violated by the Agencies "wrongfully depriv[ing] the Plaintiffs of substantial property interests without due process or due course of law."[7] Appellants' App. Vol. II p. 68. Plaintiffs argued in Count III that they were deprived of the equal protection of the law "in violation of the Fourteenth

---

[6] Plaintiffs argue that Agencies did not request summary judgment on the Indiana Constitution claims, but in their summary judgment reply brief, Agencies argued that a private right of action for alleged violations of the Indiana Constitution has been rejected by Indiana courts. The trial court addressed the issue and granted summary judgment on the grounds that there is not a private right of action for an alleged violation of the Indiana Constitution. On appeal, "we may affirm the grant of summary judgment any grounds the Rule 56 materials support." *Reed v. Reid*, 980 N.E.2d 277, 305 n.21 (Ind. 2012).

[7] Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

Amendment to the United States Constitution." *Id.* at 69. Although not mentioned in their complaint, on appeal, Plaintiffs contend that their complaint also gave rise to "a violation of the equal protection guarantees enshrined in Article 1, Section 23 of the Indiana Constitution."[8] Appellants' Br. p. 29.

[19] The trial court granted Agencies' motion for summary judgment on this issue because "[t]here is not a private right of action for an alleged violation of the Indiana Constitution." Appellants' App. Vol. II pp. 43-44. We agree.

[20] "[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution." *Smith v. Indiana Dep't of Correction*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007), *trans. denied*; *see also Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 511 (Ind. 2005) (holding that the Court had "never held that the Open Courts Clause provides a substantive 'right' of access to the courts or to bring a particular cause of action to remedy an asserted wrong"); *City of Indianapolis v. Cox*, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014), *trans. denied*; *Dunigan v. State*, 191 N.E.3d 851, 857 (Ind. Ct. App. 2022), *trans. denied*. Here, Plaintiffs have requested monetary damages; they have not pursued declaratory or injunctive relief. Because "there is no express or implied right of action for monetary damages under the Indiana Constitution," Plaintiffs cannot succeed on such a claim. *See Smith*, 871 N.E.2d at 986.

---

[8] Article 1, Section 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

Accordingly, the trial court properly granted summary judgment to Agencies on Plaintiffs' claims under the Indiana Constitution.[9]

## II. Takings Claims

[21] Next, Plaintiffs challenge the trial court's grant of summary judgment regarding takings under the Fifth Amendment of the United States Constitution and Article 1, Section 21 of the Indiana Constitution. Article 1, Section 21 of the Indiana Constitution provides in part: "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." "The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, includes the same proscription against the taking of property without just compensation." *Himsel v. Himsel*, 122 N.E.3d 935, 946 (Ind. Ct. App. 2019), *trans. denied*.

[22] Plaintiffs complain that a private right of action exists regarding takings claims and that the trial court did not directly address their takings claim. The trial court's alleged oversight, however, is easily explained—Plaintiffs' third

---

[9] Counts II and III also raised claims under the United States Constitution. On appeal, Plaintiffs do not specifically challenge the trial court's grant of summary judgment on those claims. To the extent Appellants' briefs mention the claims under the United States Constitution, those claims are waived for failure to make a cogent argument. *See* Ind. App. R. 46(A)(8). Waiver notwithstanding, "[o]rdinarily, federal constitutional claims must be brought under 42 U.S.C. § 1983," which Plaintiffs fail to do. *Dunigan*, 191 N.E.2d at 857. "Nevertheless, it is well settled that a State cannot be liable under a Section 1983 claim, as that section applies only to 'persons.'" *Id.* (citing 42 U.S.C. § 1983; *City of Warsaw v. Orban*, 884 N.E.2d 262, 267-68 (Ind. Ct. App. 2007) ("[A] state or state agency may not be sued under § 1983 regardless of the type of relief requested . . . ."), *trans. denied*). Accordingly, the trial court properly granted summary judgment to Agencies on Plaintiffs' claims under the United States Constitution.

amended complaint simply did not allege that Agencies engaged in a regulatory taking. In fact, although this matter has been pending since 2013, Plaintiffs did not mention a takings claim until their reply to Agencies' second motion for summary judgment.

Indiana adheres to the principles of notice pleading. *Shields v. Taylor*, 976 N.E.2d 1237, 1244 (Ind. Ct. App. 2012). Indiana Trial Rule 8(A) merely requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled. . . ." "Under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case." *Shields*, 976 N.E.2d at 1244. "Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial." *Id.* at 1245. "Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it." *Id.* "A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *Id.*

Plaintiffs apparently rely upon Count II of the third amended complaint, which provided in full:

## COUNT II

## (Due Process and Due Course of Law)

97. Plaintiffs [ ] respectfully incorporate by reference herein and reallege each of the foregoing allegations of this Third Amended Complaint as if the same were [set] forth fully in this Count II.

98. The acts and/or conduct of each of the [Agencies] toward Plaintiffs were and/or was arbitrary and capricious and lacked a reasonable basis.

99. By way of such acts and/or conduct, each of the [Agencies] wrongfully deprived the Plaintiffs of substantial property interests without due process or due course of law.

100. Such deprivations are in violation of the Fifth Amendment to the United States Constitution and of Article 1, Section 12 of the Indiana Constitution.

101. As a proximate result of such violations, Plaintiffs have suffered injuries, losses, and damages thereby.

Appellants' App. Vol. II p. 68.

[25] This count specifically alleged a due process/due course of law violation and referenced Article 1, Section 12 of the Indiana Constitution, which provides for due process. The Indiana Constitution's takings clause, Article 1, Section 21, is not mentioned in the third amended complaint. Count II does mention the Fifth Amendment of the United States Constitution, which contains both the due process provisions and the takings provision.[10] But Plaintiffs specifically

---

[10] The Fifth Amendment provides in full:

labeled this count as raising due process/due course of law violations, not a takings claim. Although the caption of a count in a complaint is not controlling, it is an indication of Plaintiffs' intent and theory of their case.

[26] In essence, Plaintiffs now contend that Agencies' actions resulted in a regulatory taking. A regulatory taking occurs when a regulation "deprives an owner of all or substantially all economic or productive use of his or her property." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 577 (Ind. 2007). "This test focuses on several factors: the economic impact of the regulation on the claimant, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Id.* at 577-78. Our review of the third amended complaint reveals no indication that Plaintiffs were pursuing such a claim. Plaintiffs' complaint was simply insufficient to put Agencies on notice that Plaintiffs were pursuing a regulatory takings claim. *See, e.g.*, *Shields*, 976 N.E.2d at 1247 (holding that the counterclaim did not plead a theory of prescriptive easement). Accordingly, Plaintiffs have failed to demonstrate error regarding the trial court's grant of summary judgment.

---

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation**.

(emphasis added).

### III. Immunity to Tort Claims

[27] Next, Plaintiffs argue that the trial court erred by granting summary judgment on their tort claims due to immunity under the ITCA.[11] Plaintiffs appear to be referring only to their claim in Count IV for tortious interference with a business relationship, not their tort claims in Count I, which were previously resolved in the first summary judgment proceeding. Accordingly, we will limit our discussion to Plaintiffs' tortious interference claim. Plaintiffs focus upon only the Signatures Matter, the Jarrett Building Matters, and the Reciprocal Licensing Matter. The trial court found that Agencies were entitled to immunity under "Indiana Code § 34-13-3-3(a)(6), (a)(7), (a)(8), (a)(11) and/or (a)(12)" for these incidents, except for the Reciprocal Licensing Matter, which we discuss in Part IV. Appellants' App. Vol. II p. 44.

[28] "Governmental immunity from suit is governed by the [ITCA]." *Bartholomew Cnty. v. Johnson*, 995 N.E.2d 666, 671 (Ind. Ct. App. 2013). "Governmental entities and their employees are subject to liability for torts committed by them unless they can prove that one of the immunity provisions of the ITCA applies." *Id.* "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity." *Id.* "The party seeking immunity bears the burden of establishing its conduct comes within the Act."

---

[11] Plaintiffs also argue that the ITCA and its immunity provisions are inapplicable to direct constitutional claims. We need not address this argument as the trial court properly granted summary judgment on the direct constitutional claims.

*Id.* "While the issue of a governmental entity's immunity from liability under the ITCA may require extended factual development, the issue remains a question of law for the courts." *Id.* at 671-72.

The ITCA provides in Indiana Code Section 34-13-3-3(a) that:

> A governmental entity or an employee acting within the scope of the employee's employment[12] is not liable if a loss results from the following:
>
> * * * * *
>
> (6) The initiation of a judicial or an administrative proceeding.
>
> (7) The performance of a discretionary function. . . .
>
> (8) The adoption and enforcement of or failure to adopt or enforce:
>
>> (A) a law (including rules and regulations) . . . .
>>
>> unless the act of enforcement constitutes false arrest or false imprisonment.
>
> * * * * *
>
> (11) The issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license,

---

[12] Plaintiffs make no argument regarding the scope of the employees' employment.

certificate, approval, order, or similar authorization, where the authority is discretionary under the law.

(12) Failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety.

* * * * *

[30] Agencies sought summary judgment based upon Indiana Code Section 34-13-3-3(a)(6), (7), (8), (11), and (12), and the trial court found that Agencies were entitled to immunity under these provisions "as to the Tortious Interference with Contractual and/or Business Relationships Claim as alleged in Count IV based on these underlying facts." Appellants' App. Vol. II p. 44. On appeal, although the trial court found immunity under five separate provisions, Plaintiffs specifically did not address immunity under Section (a)(8) and, thus, have waived this issue.

[31] Waiver notwithstanding, we conclude that Agencies are entitled to immunity here. Agencies' actions at issue relate to: (1) the Signatures Matter—the denial of annual elevator operating permits because Mike signed the renewal forms as both the elevator mechanic and the elevator inspector; and (2) the Jarrett Building Matters—the requirement of an alteration permit regarding the Jarrett Building elevator. Indiana Code Section 22-15-5-4(a) specifically directs the department to "carry out a program for the periodic inspection of regulated

lifting devices being operated in Indiana."[13]  Further, "[a]fter a regulated lifting device has been installed **or altered**, an applicant shall apply for an initial operating certificate."  Ind. Code § 22-15-5-4(c) (emphasis added).  The department, thus, has the right and duty to regulate such elevators.

[32]  We find that this situation is similar to *Dep't of Nat. Res. v. Taylor*, 419 N.E.2d 819, 820 (Ind. Ct. App. 1981).  There, the Department of Natural Resources informed the landowners that a permit was unnecessary for the construction of landowners' dam, but the Department later issued an order for landowners to cease further construction, dewater the lake, and breach the dam.  In addition to challenging the order through administrative proceedings, the landowners filed a complaint for damages.  The Department appealed the denial of its motion for summary judgment and argued that it was immune from liability for damages under the ITCA.

[33]  On appeal, this Court considered the Department's immunity under the "initiation of an administrative proceeding, performance of a discretionary function, [and] the enforcement of rules and regulations" provisions of the ITCA.  *Taylor*, 419 N.E.2d at 823.  We held:

> A plaintiff may not escape the immunity provisions of the Tort
> Claims Act by merely characterizing his action as something that
> it is not.  The essential act complained of by [the landowners]
> was the issuance of an order to abate an unsafe dam.  Insomuch

---

[13] "Department" in this statute refers to the Department of Homeland Security.  Ind. Code §§ 22-12-1-9; 22-15-1-3.

as this action was undertaken by the Department pursuant to a duty entrusted to it by statute, it qualifies for immunity under Ind. Code 34-4-16.5-3 (5), (6), or (7)[14], so far as any tort liability is concerned under the theories of negligence or intentional tort denominated in Taylor's complaint . . . .

*Id*.

[34] Similarly, here, the Agencies were performing their statutory duties when reviewing the elevator permits and repairs/alterations. Plaintiffs' complaints relate, at a minimum, to the Agencies' "enforcement of . . . a law (including rules and regulations)" and the "initiation of a judicial or an administrative proceeding." Ind. Code §§ 34-13-3-3(a)(6), (8). Accordingly, as in *Taylor*, we conclude that the Agencies are entitled to immunity under the ITCA, and the trial court properly granted summary judgment to Agencies on Plaintiffs' tortious interference claim related to the Signatures Matter and the Jarrett Building Matters.[15]

---

[14] At the time, the ITCA provided:

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> (5) the initiation of a judicial or administrative proceeding:
>
> (6) the performance of a discretionary function;
>
> (7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment(.)

*Taylor*, 419 N.E.2d at 822. The statute is now found at Indiana Code Section 34-13-3-3.

[15] The fact that Plaintiffs were ultimately successful in their administrative appeals/petitions for judicial review in these two situations does not require a different result here. We note that the AOPA "establishes the exclusive means for judicial review of an agency action," unless an exception applies. *Kelly v. Indiana Bureau of Motor Vehicles*, 260 N.E.3d 934, 940 (Ind. 2025) (citing Ind. Code § 4-21.5-5-1). And the AOPA "provides no remedy for damages." *Id.* "Instead, a court may 'set aside an agency action' and either remand

## IV. Reciprocal Licensing Matter

[35] Finally, on cross-appeal, Agencies challenge the trial court's denial of their motion for summary judgment regarding the Reciprocal Licensing Matter. The trial court found genuine issues of material fact as to whether the denial of the reciprocal licenses was vindictive and, thus, denied Agencies' motion for summary judgment regarding the tortious interference claim related to the Reciprocal Licensing Matter.

[36] Again, the ITCA provides immunity for a "governmental entity or an employee acting within the scope of the employee's employment"[16] if the "loss results from . . . . (11) The issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law." I.C. § 34-13-3-3(a). "To determine whether the State has discretion under the law in this case, we must determine whether the enabling statutes or applicable regulations authorize state officials to make choices as to whether to grant or deny [the licenses]." *Richardson v. Salaam*, 726 N.E.2d 888, 894 (Ind. Ct. App. 2000), *trans. denied*.

---

for further proceedings or 'compel agency action that has been unreasonably delayed or unlawfully withheld.'" *Id.* (citing I.C. § 4-21.5-5-15).

[16] Plaintiffs concede that the employees were acting within the scope of their employment. Appellants' Reply Brief p. 29.

[37] Indiana Code Section 22-15-5-12(a) provides: "An individual may not act as an elevator mechanic unless the individual holds an elevator mechanic license issued under this chapter." Subsection (b) lists the eligibility criteria for applicants for an elevator mechanic license, including that the individual "[holds] an active elevator mechanic license issued by a state that the commission has determined has a licensing program that is at least equivalent to the elevator mechanic licensing program established under this chapter." Ind. Code § 22-15-5-12(b)(1). The statute gives the commission discretion to determine whether the other state's licensing program is equivalent to the Indiana licensing program. Under these circumstances, the denial of the reciprocal licenses requested by Plaintiffs falls within the immunity provision of Indiana Code Section 34-13-3-3(a)(11).

[38] The trial court, however, determined that genuine issues existed regarding whether the denial was "vindictive[]." Appellants' App. Vol. II p. 45. "Immunity under the ITCA 'assumes negligence but denies liability.'" *Bewley v. Town of Speedway*, 222 N.E.3d 1013, 1017 (Ind. Ct. App. 2023) (quoting *Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 453 (Ind. 2011)), *trans. denied*. "If immunity exists, the public body and the employees **simply are not liable**." *Taylor*, 419 N.E.2d at 823 (emphasis added). "The degree of the Department's culpability, and the nature of its tortious conduct, are not relevant considerations." *Id.* If Agencies are immune under the ITCA, the "vindictiveness" of the denial of the reciprocal licenses is simply not relevant.

Accordingly, we conclude that Agencies were also entitled to immunity under the ITCA for the Reciprocal Licensing Matter.

[39] In making this determination, we note that whether an employee's conduct was vindictive may be relevant to determining whether the employee is entitled to immunity from **personal liability**.[17] The ITCA ordinarily shields a state employee from being held personally liable for torts committed within the scope of their employment. "To sue a government employee personally, the plaintiff must allege that the employee's acts or omissions causing the loss are '(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally.'" *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 274 N.E.3d 437, 441 (Ind. 2026) (quoting Ind. Code § 34-13-3-5(c)); *id*. at 442 n.3 ("To be sure, there may be cases when an employee loses immunity by acting 'so far out of the scope of his or her employment as to amount to fraud or criminal conduct.'"). Plaintiffs, however, did not sue any government

---

[17] We do not find the trial court's reliance upon *Indiana Dep't of Correction v. Stagg*, 556 N.E.2d 1338 (Ind. Ct. App. 1990), *trans. denied*, to be persuasive. In *Stagg*, the plaintiff sued the Indiana Department of Correction and two of its employees for defamation, and the trial court awarded the plaintiff damages. On appeal, however, this Court found that the defendants were entitled to immunity under the ITCA. Citing *Taylor*, we noted that the degree of culpability and the nature of the tortious conduct was irrelevant.

We then stated: "In *Seymour National Bank v. State,* [428 N.E.2d 203, 204 (Ind. 1981)], our supreme court stated that immunity may be lost if the acts of public employees are so 'outrageous as to be incompatible with the performance of the duty undertaken'." *Id.* at 1343-44. In *Seymour*, our Supreme Court noted that: "Such acts, whether intentional or willful and wanton, are simply beyond the scope of the employment." 428 N.E.2d at 204. We take our Supreme Court's comment regarding the outrageous acts to relate to whether the employee's acts are within the scope of employment, a question not at issue here. Moreover, our Supreme Court later overruled *Seymour*. *See Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000).

employee in their personal capacity; Plaintiffs only brought claims against Agencies.[18] The trial court's ruling implies that an employee's vindictive conduct can strip an agency of its statutory immunity, but this implication simply is not supported by the language of the ITCA.

[40] We conclude that Agencies had immunity to Plaintiffs' tortious interference claim regarding the reciprocal licenses under the ITCA. Accordingly, the trial court erred by denying Agencies' motion for summary judgment regarding this claim.

## Conclusion

[41] Agencies were entitled to summary judgment regarding each of Plaintiffs' claims. Accordingly, the trial court did not err by granting Agencies' motion for summary judgment regarding the majority of Plaintiffs' claims, but the trial court erred by denying Agencies' motion for summary judgment regarding Plaintiffs' tortious interference claim with respect to the Reciprocal Licensing Matter. We affirm in part, reverse in part, and remand for the trial court to enter summary judgment for Agencies on all claims.

---

[18] Indiana Code Section 34-13-3-5(b) provides:

> A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, whose conduct gave rise to the claim resulting in that judgment or settlement. A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally.

Affirmed in part, reversed in part, and remanded.

Bradford, J., and Felix, J., concur.

ATTORNEY FOR APPELLANTS/CROSS-APPELLEES

Douglas K. Briody
Law Office of Doug Briody
Evansville, Indiana

ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS

Theodore E. Rokita
Attorney General of Indiana

Evan Matthew Comer
Supervising Deputy Attorney General
Indianapolis, Indiana